1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF VIRGINIA
2                        ALEXANDRIA DIVISION

3   UNITED STATES OF AMERICA,    )  Case 1:11-cr-00556
                                 )
4                 Plaintiff,     )
                                 )
5        v.                      )  Alexandria, Virginia
                                 )  June 1, 2012
6   RANCES ULICES AMAYA,         )  9:17 a.m.
                                 )
7                 Defendant.     )
                                 )  Pages 1 - 24
8   ─────────────────────────────

9                     TRANSCRIPT OF SENTENCING

10          BEFORE THE HONORABLE ANTHONY J. TRENGA

11             UNITED STATES DISTRICT COURT JUDGE

12
    APPEARANCES:
13
    FOR THE PLAINTIFF:
14
         G. ZACHARY TERWILLIGER, ESQUIRE
15       MICHAEL J. FRANK, ESQUIRE
         OFFICE OF THE UNITED STATES ATTORNEY
16       2100 Jamieson Avenue
         Alexandria, Virginia  22314
17       (703) 299-3700

18  FOR THE DEFENDANT:

19       MICHAEL S. ARIF, ESQUIRE
         MELISSA M. SANCHEZ, ESQUIRE
20       MARTIN, ARIF & GREENE, PLC
         8001 Braddock Road, Suite 100
21       Springfield, Virginia  22151
         (703) 323-1200
22
    THE DEFENDANT, RANCES ULICES AMAYA, IN PERSON
23

24

25      COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES


        Rhonda F. Montgomery   OCR-USDC/EDVA   (703) 299-4599

1          THE CLERK:  Criminal Case 1:11-556, *United*

2 *States of America v. Rances Ulices Amaya.*

3          Will counsel please note their appearances

4 for the record.

5          MR. TERWILLIGER:  Good morning, Your Honor.

6 Zach Terwilliger and Michael Frank on behalf of the

7 United States.

8          THE COURT:  Good morning.

9          MR. ARIF:  Good morning, Your Honor.  Michael

10 Arif and Melissa Sanchez on behalf of Mr. Amaya.

11 Mr. Amaya is present in the courtroom, Judge.

12          THE COURT:  We're here for sentencing.

13          Mr. Arif, have you reviewed the presentence

14 report with Mr. Amaya, and do you have any objections?

15          MR. ARIF:  No objections.  We have reviewed

16 it.  No objections, Judge.

17          THE COURT:  Mr. Terwilliger, any objections

18 by the government to the presentence report?

19          MR. TERWILLIGER:  Your Honor, the United

20 States does not have any objections to the presentence

21 report.

22          THE COURT:  All right.  Does the government

23 want to be heard on the sentencing factors?

24          MR. TERWILLIGER:  Yes, Your Honor.

25          THE COURT:  Please.

1          MR. TERWILLIGER:  Your Honor, the United

2   States respectfully requests that this Court impose a

3   sentence of life imprisonment.  The government does not

4   ask for this sentence lightly.  But as the following

5   makes abundantly clear, life sentences are reserved for

6   the most heinous of crimes and the most violent

7   offenders, and the defendant meets both criteria in

8   spades.

9          First, looking to the nature and

10  circumstances of the offense, Your Honor, as this Court

11  heard directly from the victims at trial, it does not

12  get much more gruesome or dire than the nature and

13  circumstances of this offense.

14          Preying upon vulnerable girls in need of

15  help; responding to that call for help through the

16  forced oral sex of a juvenile; the forcible violation

17  of a young girl; gang rape; sexual slavery; forced

18  sexual intercourse with multiple strangers per day;

19  physical, mental, and sexual abuse of juveniles;

20  victims who lived in constant fear, trauma, and

21  physical violation; 14-year-olds being made to have sex

22  with physically dirty adult men in work vans,

23  hatchbacks, sleezy motels, and construction sites;

24  young girls plied with drugs and alcohol to the point

25  of incapacitation only to awake to the horror of this

1    reality day after day.

2         The defendant's actions took this despicable

3    and depraved act, this prostitution scheme, and he

4    personally added the horror of sexual assault, rape,

5    and gang members running trains on juveniles.  Given

6    these circumstances, the defendant has earned a life in

7    prison.

8         Looking to the history and the

9    characteristics of the defendant, given the horrific

10   nature and circumstances of this case, it's hard to

11   imagine any other sentencing factor rivaling that of

12   the nature and circumstances, but defendant manages to

13   accomplish this through his criminal history and his

14   complete lack of character.

15        The defendant is a violent, sexually depraved

16   menace to society.  His criminal record begins about

17   the time he reentered the United States at the age of

18   13 and runs continuously until the present.  He has 12

19   convictions over a 10-year period, and he's appeared at

20   sentencing on at least 12 occasions, 12 opportunities

21   to heed a judge's warning, make positive change, and

22   turn things around.

23        Each time he responded to those sentencings

24   by committing more crimes, oftentimes more serious

25   crimes, and not just crimes, Your Honor, but crimes

1   that hurt other people from theft to assault to machete

2   attacks and now sex trafficking.

3           The defendant was given 12 chances.  Frankly,

4   those additional chances, the suspended sentences

5   provided him the freedom to destroy these three young

6   girls' lives.  Ironically, the number 13, which holds

7   so much significance for the defendant, this is his

8   13th conviction.  He cannot and should not be given a

9   13th chance.

10          Even more telling than his convictions, Your

11  Honor, are defendant's actions, which reveal his

12  dangerous and evil characteristics.  When locked up in

13  juvenile probation, he spit on staff, recruited other

14  youths into MS-13, and was vindictive towards others.

15          Upon release from juvenile probation, he

16  attacked innocent partygoers with a machete at a

17  neighbor's Sweet 16 party.  He then trespassed into a

18  high school where he had been expelled, and while

19  others were ostensibly trying to learn something, he

20  beat a student while yelling MS-13 forever.

21          When locked up for these crimes, he almost

22  caused a near riot in the jail and exposed himself to a

23  teacher that was devoting her time to teaching inmates.

24          This deeply flawed character revealed itself

25  not only in this case but in defendant's actions here

1  in this very courtroom.  He has shown absolutely no

2  remorse.  He has disrespected the sanctity of this

3  court and our justice system by throwing up gang signs

4  and his middle finger in open court.

5       His history and characteristics reveal an

6  evil and sadistic person, one who has spent the vast

7  majority of his adult and adolescent life hurting

8  people.  For the sake of these three victims as well as

9  the victims that come before, he should never be

10 permitted to live freely again and have the possibility

11 of hurting someone else.

12      Looking to deterrence, Your Honor, as this

13 Court is aware, this represents the fourth MS-13

14 juvenile sex trafficker who has come before the court

15 in the last ten months.  Deterrence has never been more

16 critical than it is at this juncture.  Nothing will

17 send a stronger message to MS-13 members and would be

18 sex traffickers than a life in prison.

19      As a representative of the United States, I

20 am often bringing up the notion of deterrence at

21 sentencing, but what's different here is that the

22 defendant has absolutely earned this life sentence.

23 Deterrence is not the reason for a life sentence.  It

24 is one of many reasons for a life sentence.

25      Regarding protection of the public, the

defendant's constant and escalating recidivism make it a fact that the only way the public can be protected now is through incapacitation.  This is no longer a hypothetical question, Your Honor.

When given the opportunity to live amongst the community, the defendant hurts people.  The government respectfully asks this Court to do what previous courts have failed to do, protect the public from the defendant's evil actions.

Finally, Your Honor, looking at other similarly situated defendants and to avoid unwarranted sentencing disparities, the government requests that a sentence of life imprisonment should be imposed.

Out of all other juvenile sex traffickers brought before this Court, the defendant has by far the most lengthy criminal history.  The defendant has amassed 15 criminal history points.  He has a criminal history category VI.

Jose Santamaria, aka Sniper, who was sentenced on this very floor of this courthouse, received a life sentence; yet, he only had two criminal history points.  Alonso Cornejo, Casper, had one criminal history point, and he received a sentence of 25 years.

The defendant possesses an adjusted offense

1   level of 42.  Jose Santamaria was 1 point higher at 43

2   and got life.  As I just mentioned, Jose Santamaria's

3   criminal history was minuscule when compared to that of

4   the defendant.  Alonso Cornejo had an even lower

5   offense level of 40.

6            Looking specifically to the coconspirators in

7   this case, unlike his coconspirator Cornejo, the

8   defendant has accepted no responsibility.  He had a

9   criminal history 14 points higher than Cornejo.  On a

10  13-point scale, he was 14 points higher.  He raped

11  multiple juveniles on multiple occasions as part of the

12  sex trafficking scheme.

13           The defendant has earned a sentence of life

14  imprisonment, and compared to any other MS-13 juvenile

15  sex trafficker, when you compare his record and what he

16  engaged in to what they have done, it reaffirms this

17  assertion.

18           This proceeding obviously deals with a very

19  difficult task of potentially imprisoning an individual

20  for life.  However, as the foregoing makes clear, the

21  defendant has potentially imprisoned multiple juveniles

22  for life with the mental anguish and trauma they

23  suffered at his hands.

24           It's important to note that the defendant

25  likely knew this day would come.  The three dots which

1  adorn both of his eyes, in MS-13 culture, they stand

2  for the three places MS-13 will take you once you join

3  the gang, the hospital, the cemetery, or prison.

4          The government respectfully requests, as the

5  guideline suggest, the facts demand, and justice

6  requires, that this Court impose a life sentence.

7          THE COURT:  Mr. Arif.

8          MS. SANCHEZ:  Your Honor, the defense has

9  submitted their position as to sentencing.  I believe

10  we've also submitted a supplement filled with letters

11  from the family of Mr. Amaya, who are also present in

12  the courtroom today, sir.

13          Your Honor, the only thing that we would add

14  to that is simply what all of those documents detail,

15  which is that Mr. Amaya's life -- in his very short

16  life has had -- has been deprived, I should say, of the

17  most basic and fundamental things, things that you and

18  I and everyone hopefully in this courtroom has had,

19  which is a family, a mother, and a father.

20          Mr. Amaya was separated from his family at a

21  very early age and taken out of the United States.  We

22  submit, Your Honor, that the Rances Amaya that returned

23  to the United States was not the same little boy.

24  While he was in other parts of the world, he did

25  receive a very cruel and very brutal introduction into

1    the life of crime and not through his own doing but

2    through his surroundings.

3          While we submit, Your Honor, this is in no

4    way an excuse, this is simply a reason and the

5    beginning of something, the beginning of what we see

6    today, which is the Mr. Amaya who is here before you.

7    We ask that Your Honor consider that, and for that

8    reason along with other reasons submitted in our

9    documentation for leniency.

10          Thank you.

11          THE COURT:  Mr. Amaya, you have the right to

12    address the Court before it imposes sentence if you

13    wish to do so.  Do you have any anything to say?

14          THE DEFENDANT:  How you doing?  Well, Your

15    Honor, I know I haven't been a saint all of my life.  I

16    know I made my mistakes and stupid decisions throughout

17    my youth.  I would like to apologize for the damage

18    I've caused on the community and on any citizen that my

19    behavior has traumatized.  I take responsibility for

20    any harm or action that may have been the result of

21    someone being victimized in any kind of way.  I'm

22    truly, truly sorry, and this is not just words.  This

23    is from my heart.

24          I would also like to apologize to the courts

25    for any inconvenience that I have caused them.  I am

1  asking that the courts and anybody else in here,

2  including you, Your Honor, to believe me when I say

3  that I've done a lot of very bad things in my life as a

4  juvenile and as an adult I am very ashamed of.  I wish

5  to God that I could take back.  I have asked God to

6  forgive me for my reckless lifestyle and also asking

7  the Court to please have mercy on me.

8          I would like to express that in my

9  presentencing report the things that I did that were

10  bad and wrong and true, but never once did he mention

11  the things that I did accomplish, which was getting my

12  GED, the vocational classes that I completed, and also

13  was enrolled in Nova.

14          In closing I would like to say that I've done

15  some serious soul searching because I realize the

16  serious mistake that has brought me to a possible end.

17  That could very well result in me losing my three kids.

18          I would like to express the behavior that I

19  displayed throughout the trial and at the end that were

20  truly unnecessary.  It was only my own fault and bad

21  spirits that caused me to act foolish when I should

22  have been more mindful of the circumstances.

23          I am not denying that I don't know these

24  people or that I have partied with these people.  Yes,

25  I do take responsibility for associating with them, but

1    I do not take responsibility for the charges that I'm

2    here for today.  I'll say it to my last breath.

3            Your Honor, whatever you decided today, I

4    agree with it because I know God put it in you and into

5    your heart.  So thank you for hearing me.

6            THE COURT:  Have a seat, please.

7            This matter is before the Court in the case

8    of *United States v. Rances Ulices Amaya*.

9            With respect to his conviction after trial of

10   Count 1 of the indictment charging conspiracy, in

11   violation of Title 18, United States Code, Section 371,

12   which is a Class D felony punishable up to 5 years in

13   prison, a $250,000 fine, a 3-year term of supervised

14   release, and a $100 special assessment; and also

15   Counts 2 to 4, which charge for which he's been

16   convicted of sex trafficking of a child, in violation

17   of Title 18, United States Code, Sections 1591 and 2, a

18   Class A felony, each count punishable by up to 10 years

19   to life in prison, a $250,000 fine, full restitution, 5

20   years to life of supervised release, a $100 special

21   assessment.

22           This 24-year-old defendant was involved in a

23   prostitution ring involving minors between the ages of

24   14 and 18, which operated between the summer 2009 and

25   the winter 2010.  The defendant was arrested on

1  October 26, 2011, and has been in federal custody since

2  that date.

3           On November 23, 2011, a four-count indictment

4  was returned against him charging conspiracy to commit

5  sex trafficking of a child and three counts of sex

6  trafficking of a child.  He pled not guilty to these

7  charges and proceeded to trial on February 21, 2012.

8  On February 23, 2012, the jury returned a verdict of

9  guilty on all four counts.

10          The Court has reviewed the sentencing

11  guidelines.  In this regard, the offense level with

12  respect to the conspiracy charge is 30.  Since it's

13  based on the substantive offense of sex trafficking of

14  a minor, two additional offense levels are added.

15  Since the defendant influenced a minor to engage in

16  prohibited sexual conduct, an additional two levels

17  because the offense involved the commission of a sex

18  act resulting in an overall offense level of 34.

19  Likewise, with respect to Counts 2 through 4 of the

20  indictment charging sexual trafficking of a child, the

21  offense level is 34.

22          Counts 1 and 2 and Counts 1 and 3 and 1 and 4

23  group.  The others don't, resulting in an additional

24  three levels for an overall offense level of 37.

25          The defendant also is properly assessed an

1  additional 5 levels since his conduct involved a

2  pattern of repeat sexual offenses resulting in an

3  overall offense level of 42.

4          With respect to his criminal history level,

5  he has 12 prior convictions, 5 of which occurred as a

6  juvenile resulting in an overall criminal history --

7  I'm sorry -- criminal history points of 13.  These

8  offenses occurred while he was on probation from

9  another offense resulting in an additional 2 levels for

10 a criminal history level of 6.

11         The guideline sentence for someone with an

12 offense level of 42, criminal history VI is 360 months

13 to life as to Counts 2 and 4, 60 months as to the

14 conspiracy count, supervised release of 1 to 3 years on

15 Count 1 and 5 years on Counts 2 to 4, a fine of $25,000

16 to $250,000 and a special assessment of $100 per count.

17         The Court has also considered the sentencing

18 factors in this case and has reviewed the information

19 available to it not only in the presentence report but

20 also as a result of the testimony at trial that took

21 place in this courtroom.

22         The Court first considers the seriousness and

23 nature of this offense.  As to that consideration, the

24 record before the Court is that this defendant,

25 beginning in June 2009, who was a known member of the

1  MS-13 gang, together with Alonso Cornejo, Henry

2  Herrera, and Alexander Rivas, some of whom are also

3  gang members, operated a prostitution ring using minor

4  females that they had recruited.  At least three of

5  them were runaways.

6       Cornejo and Herrera first began prostituting

7  the minors.  They were later joined by the defendant,

8  and the defendant and his cohorts organized and

9  operated the details of the enterprise, including

10 renting hotel rooms, arranging for customers, and

11 providing girls with drugs, marijuana, and alcohol.

12      As far as the defendant's particular

13 involvement, the Court must conclude based on the

14 evidence that he played an essential if not dominating

15 role in the operation.

16      As the victims confirmed in their testimony

17 at trial, he forced them initially when they were

18 recruited to have sex with him in order to groom them

19 for their prostitution business.  He, together with the

20 others, advertised the availability of girls, often

21 soliciting customers where day laborers gathered to

22 seek work.

23      He also arranged to have fellow gang members

24 have sex sequentially with a single girl, and he

25 managed the business when others were busy staying with

1  the victims at hotels at night, taking them to their

2  appointments, and ensuring that they did not flee.

3      The defendant was also described at trial as

4  providing the muscle for the operation that ensured

5  that the female victims did as they were told and the

6  customers paid for sex.  In that regard, he used

7  violence or the threats of violence to keep the girls

8  in line and compliant and for that purpose carried a

9  weapon to deliver the girls to customers and physically

10 assaulted the girls.

11     One of the female victims testified that the

12 defendant hit her in the face when she tried to exhibit

13 any independence and had sex with her regularly and got

14 her drunk.  Others testified that the defendant

15 provided her with drugs and had sex regularly even as

16 she struggled to get away.  He also used his gang

17 status to instill fear in these young victims.

18     The presentence report states that there are no

19 aggravating or mitigating adjustments for defendant's

20 role in the offense relative to others and that the

21 defendant worked with his fellow gang members to keep

22 the prostitution business going.

23     Nevertheless, the Court concludes for the purposes

24 of this sentencing that the defendant and his role is

25 distinguishable from the other members of this

1  conspiracy in several respects.

2      First, as I indicated, the defendant was the

3  acknowledged enforcer of the operation, whose

4  reputation for violence within the MS-13 gang allowed

5  him to keep the victims and clients in line.  He

6  provided fellow gang members with free sex with these

7  victims as a means of enhancing his stature within the

8  gang.

9      Second, the defendant's criminal history is more

10 serious than that of the other coconspirators.  In that

11 regard, he had essentially established himself as a

12 career criminal beginning with juvenile offenses at age

13 13, including an array of gang-related offenses,

14 including thefts, assaults, and probation violations,

15 which included, among others, an attack on a person

16 with a machete.

17     Third, the defendant is significantly older than

18 the 18-year-old Cornejo and the 19-year-old Rivas.

19 Based on all the evidence, it concludes that he play a

20 more dominating role in connection with the operation

21 of the prostitution ring.

22     Finally and significantly, the defendant's

23 guideline sentence is significantly higher than the

24 others attributable in part to his failure to accept

25 responsibility, as well as his higher criminal history.

1  In that regard, his criminal history of VI is compared

2  with V for Rivas and criminal history I for Cornejo.

3      The Court has considered the guideline sentence,

4  more generally, how it was calculated, the factors that

5  resulted in that sentence, and how that sentence

6  differed from the others who have been sentenced and

7  why.

8      Against this background, the Court has considered

9  the sentences already imposed on the other

10 coconspirators and the need to avoid unwarranted

11 sentence disparities.  In that regard, Rivas has

12 received a sentence in this court of 120 months against

13 the guideline sentence of 168 to 210 months.  Cornejo

14 received a sentence in this court of 292 months against

15 the guideline sentence of 292 to 360 months.  Herrera

16 has received a sentence of 300 months in state court.

17     The Court has also considered the life sentence

18 given to another defendant in this court in an

19 unrelated case which involved the more serious offense

20 of sex trafficking of a minor under the age of 14.

21     The Court has also considered the history and the

22 characteristics of this particular defendant, and there

23 is no doubt he has faced some challenges in his life.

24 He was born in the United States but at an early age

25 was sent to live with relatives in El Salvador by his

1    mother.   Then he returned here to live with his mother

2    where he has struggled since returning.

3        He has an extensive juvenile record, as I said,

4    beginning at age 13.   He was expelled from high school

5    because of his conduct, which included assaults and

6    other disruptive behavior.   As an adult, he has had

7    multiple convictions, including convictions based on

8    various gang-related activity.

9        As reflected in his long criminal history, he

10   clearly has a disposition for violence with the

11   prospects for recidivist behavior very high,

12   particularly in light of his gang affiliation, his lack

13   of any real vocational skills, and his steadfast

14   refusal certainly at least during the trial up to

15   today's hearing of any responsibility or exhibit any

16   remorse or any sense of regret or even wrongdoing.

17       In short, the Court finds little, if anything, to

18   mitigate the otherwise applicable sentencing

19   considerations, particularly when one considers the

20   heinous nature of the crime and the level of depravity

21   inherent in that crime and the harm inflicted on these

22   young victims.

23       The Court has also considered the public interest

24   and the need for deterrence, both of which must be

25   assessed with respect to the injuries inflicted on

1   these victims and the threat imposed by the MS gang

2   that was part and parcel of this criminal enterprise.

3       With respect to these victims, some of whom were

4   as young as 14, one cannot imagine the depths of fear

5   and despair that they must've experienced, the effects

6   of which will no doubt accompany them throughout their

7   lives.  The Court is simply at a loss to understand the

8   brutal, inhumane gang culture that motivated this

9   activity and justified in this defendant's mind such

10  things as passing these young girls around as sex toys

11  to fellow gang members, using them to generate revenue

12  for the gang.

13      In short, this offense cannot be separated from

14  the gang culture within which it occurred, and there

15  can be no doubt that the MS gang and its culture poses

16  a fundamental threat to the public safety.  It produces

17  in its members a nearly impenetrable commitment to

18  violence as a way of life, and the attitude of violence

19  and defiance and contempt has been amply demonstrated

20  by this defendant in this case, and the public interest

21  requires a long-term separation of this defendant from

22  the public.

23      The Court has also considered the public interest

24  in terms of whether to impose the maximum sentence

25  available for this offense, life in prison, which in

1  the federal system is without any prospect of release

2  or whether something short of life can adequately

3  protect the public and serve as a deterrent and a just

4  punishment.

5      That judgment is a difficult one in this case

6  given the nature of the offense, and for that purpose,

7  the Court has considered how this offense, as serious

8  as it is, compares with the most serious offenses for

9  which the most severe sentences are reserved, among

10 them life in prison.

11     In making that judgment, the Court has considered

12 a variety of factors, including, first, the seriousness

13 of the offense relative to those offenses deserving of

14 a maximum punishment, again, considering the impact on

15 his victims for that purpose.

16     Secondly, the relatively young age of this

17 defendant and the prosects that over time his danger to

18 the public will decrease through aging or otherwise.

19 And in that connection, the Court has considered the

20 nature of his other convictions, which while serious,

21 are not among the most serious offenses.

22     Third, the Court has considered the sentence

23 imposed on the other coconspirators, where those

24 sentences fall within the applicable guideline

25 sentencing range, and also the guideline sentence

1   applicable to this defendant's criminal history but

2   assessed that the offense level assigned to those other

3   coconspirators that were sentenced in this court.

4        The Court has also considered the sentencing

5   guideline range applicable to this defendant, which

6   sanctions a less than life sentence.

7        Finally, the Court has considered the likely

8   effects of various sentences on this defendant's

9   propensity and disposition for recidivist behavior as

10  he ages during a long-term incarceration.  In that

11  regard, the Court has considered whether it would serve

12  to some degree the public interest to provide some

13  incentive to this defendant to control his behavior

14  while incarcerated with the prospect of release at some

15  point in time because of his age or perhaps some degree

16  of rehabilitation, as well as post incarceration

17  supervision, the defendant would no longer pose a

18  threat to the public.

19       Finally, the Court has considered the letters it

20  has received from, among others, his fiancee, the

21  mother of some his children, his brother, and his

22  mother, who speak to the challenges that he's faced and

23  what they see as good qualities in him.

24       Based on all the information, the Court has

25  sufficient information to impose sentence at this time.

1          Mr. Amaya, will you come to the podium, please.

2          Mr. Amaya, it will be the sentence of this Court

3    as to Count 1, conspiracy, that you be committed to the

4    Bureau of Prisons for a period of 60 months followed by

5    5 years of supervised release.  As to Counts 2, 3, and

6    4, you are committed to the Bureau of Prisons for a

7    term of 600 months, 50 years, as to each of those

8    counts to run concurrently as to each other and also as

9    to Count 1 followed by lifetime supervised release with

10   the standard conditions and also the special condition

11   of registration as a sex offender, no contact with

12   MS-13 or other gang members, and substance abuse

13   testing as directed.

14          The Court finds you have no ability to pay a fine;

15   therefore, no fine will be imposed.  The Court will

16   impose a $100 special assessment as to each of the four

17   counts for a total of $400.

18          That will be the sentence of the Court.

19          You have the right to appeal your conviction as

20   well as the sentences that are imposed by filing a

21   notice of appeal within 14 days from the date of

22   judgment.  You can ask your lawyer to do that or the

23   clerk, who will file the notice of appeal.  That will

24   be the sentence of the Court.

25          Anything further?

1          MR. TERWILLIGER:  No, Your Honor.

2          MR. ARIF:  No, Your Honor.

3          THE COURT:   Counsel is excused.

4          The Court will stand in recess.

5          ------------------------------------
                    Time:  9:46 a.m.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21
       I certify that the foregoing is a true and
22
   accurate transcription of my stenographic notes.
23

24
                                  /s/
                         _____
25                       Rhonda F. Montgomery, CCR, RPR

| 1. CIR./DIST./DIV. CODE | 2. PERSON REPRESENTED | VOUCHER NUMBER |
|---|---|---|
| VAED | Rances Ulices Amaya | |

| 3. MAG. DKT./DEF. NUMBER | 4. DIST. DKT./DEF. NUMBER | 5. APPEALS DKT./DEF. NUMBER | 6. OTHER DKT. NUMBER |
|---|---|---|---|
| | 1:11-CR-00556 | 12-4418 | |

| 7. IN CASE/MATTER OF *(Case Name)* | 8. PAYMENT CATEGORY | 9. TYPE PERSON REPRESENTED | 10. REPRESENTATION TYPE |
|---|---|---|---|
| USA vs. Rances Ulices Amaya | Felony | Adult Defendant | CC |

**11. OFFENSE(S) CHARGED (Cite U.S. Code, Title & Section)** *If more than one offense, list (up to five) major offenses charged, according to severity of offense.*

18 1591.F - Sex trafficking of children or by force fraud or coercion

## REQUEST AND AUTHORIZATION FOR TRANSCRIPT

**12. PROCEEDING IN WHICH TRANSCRIPT IS TO BE USED** *(Describe briefly)*

Appeal to Fourth Circuit

**13. PROCEEDING TO BE TRANSCRIBED** *(Describe specifically) NOTE: The trial transcripts are not to include prosecution opening statement, defense opening statement, defense argument, prosecution rebuttal, voir dire or jury instructions, unless specifically authorized by the Court (see Item 14).*

Sentencing - June 1, 2012

**14. SPECIAL AUTHORIZATIONS** *(Services Other Than Ordinary)* | **JUDGE'S INITIALS**

A: Apportioned Cost _____ % of transcript with *(Give case name and defendant)*

B. ☐ 14-Day ☐ Expedited ☐ Daily ☐ Hourly Transcript ☐ Realtime Unedited Transcript

C. ☐ Prosecution Opening Statement ☐ Prosecution Argument ☐ Prosecution Rebuttal
☐ Defense Opening Statement ☐ Defense Argument ☐ Voir Dire ☐ Jury Instructions

D. In this multi-defendant case, commercial duplication of transcripts will impede the delivery of accelerated transcript services to persons proceeding under the Criminal Justice Act. ☐

**15. ATTORNEY'S STATEMENT**

As the attorney for the person who is named above, I hereby affirm that the transcript requested is necessary for adequate representation. I, therefore, request authorization to obtain the transcript services at the expense of the United States pursuant to the Criminal Justice Act.

_____ _____
Signature of Attorney                  Date

Michael S. Arif
Printed Name

Telephone Number: **(703) 323-1200**

☒ Panel Attorney ☐ Retained Attorney ☐ Pro-Se ☐ Legal Organization

**16. COURT ORDER**

Financial eligibility of the person represented having been established to the Court's satisfaction, the authorization requested in Item 15 is hereby granted.

_____
Signature of Presiding Judicial Officer or by Order of the Court

_____ _____
Date of Order                  Nunc Pro Tunc Date

## CLAIM FOR SERVICES

**17. COURT REPORTER/TRANSCRIBER STATUS**

☒ Official ☐ Contract ☐ Transcriber ☐ Other

**19. SOCIAL SECURITY NUMBER OR EMPLOYER ID NUMBER OF PAYEE**

42-1582241

**18. PAYEE'S NAME** *(First Name, M.I., Last Name, including any suffix)*, AND MAILING ADDRESS

Montgomery Court Reporting, Inc.
401 Courthouse Square
Alexandria, VA 22314

Telephone Number: **(703) 299-4599**

| 20. TRANSCRIPT | INCLUDE PAGE NUMBERS | NO. OF PAGES | RATE PER PAGE | SUB-TOTAL | LESS AMOUNT APPORTIONED | TOTAL |
|---|---|---|---|---|---|---|
| **Original** | 1 to 24 | 24 | 3.65 | 87.60 | | 87.60 |
| | | | | | | |
| **Expenses** *(Itemize)* | | | | | | |
| | | | | **TOTAL AMOUNT CLAIMED:** | | 87.60 |

**21. CLAIMANT'S CERTIFICATION OF SERVICE PROVIDED**

I hereby certify that the above claim is for services rendered and is correct, and that I have not sought or received payment *(compensation or anything of value)* from any other source for these services.

Signature of Claimant/Payee _____ Date 08-23-2012

## ATTORNEY CERTIFICATION

**22. CERTIFICATION OF ATTORNEY OR CLERK** I hereby certify that the services were rendered and that the transcript was received.

_____ _____
Signature of Attorney or Clerk                  Date

## APPROVED FOR PAYMENT - COURT USE ONLY

**23. APPROVED FOR PAYMENT** | **24. AMOUNT APPROVED**

_____ _____        $87.60
Signature of Judicial Officer or Clerk of Court          Date